## S.H.V.C., INC. *v.* ROBERT ROY

SPEZIALE, C. J., PETERS, HEALEY, ARMENTANO and SANTANIELLO, Js.

Argued March 3—decision released September 28, 1982

*Bruce S. Beck,* with whom, on the brief, was *Jon D. Berman,* for the appellant (defendant).

*Richard S. Conti,* with whom, on the brief, was *Jerome I. Walsh,* for the appellee (plaintiff).

SANTANIELLO, J. The defendant, on the granting of certification, has appealed to this court from the sustaining, by the Appellate Session of the Superior Court, of the judgment of possession rendered in this summary process action by the Housing Session of the Superior Court at Hartford.

He claims (1) that the trial court and the Appellate Session erred in holding that a party to a contract who has continually waived the other party's habitual breach in performance may declare a for-feiture upon a subsequent breach of the same condition, relying upon a clause of the contract allowing the forfeiture "notwithstanding any prior waiver," and (2) that a nonwaiver of forfeiture clause is not an effective bar to the defenses of waiver and estoppel upon a claimed forfeiture where the conduct which gives rise to the forfeiture is the same conduct which engendered the waiver or estoppel.

The trial court filed a memorandum of decision which made the following findings: The plaintiff rented to the defendant certain premises in a building on Main Street in Manchester for use as a billiard parlor for a ten year term commencing

July 1, 1976. The monthly rent was payable in advance on the first day of each month with a ten day grace period. The written lease also contained a clause which specifically conferred upon the plaintiff the right to evict the defendant upon the breach of the defendant's obligation to pay monthly rent on or before the tenth day of any month, "notwithstanding any former waiver." The rent was paid on time through October of 1977, and for the period of November, 1977, through February, 1978, only three rent checks were offered. After the plaintiff had failed to receive the rent due on November 1, 1979, he caused a notice to quit to be served on the defendant on November 16, 1979. A check from the defendant for the November rent was later received by the plaintiff in the mail. Although the check was dated November 10, 1979, the envelope in which it was enclosed was postmarked November 19, 1979. It is uncontested that the defendant paid his rent tardily on many occasions prior to November, 1979.

Both issues set forth by the defendant in this appeal arise from the following portion of the lease agreement: "These presents are upon the express condition that if the Tenants . . . shall be in default in the payment of . . . rent . . . more than ten (10) days . . . Landlord at its option, shall have the right (*notwithstanding any former waiver*) to give written notice to Tenant . . . that Tenant shall vacate the leased premises." (Emphasis added.)

The defendant first claims that the italicized phrase, the nonwaiver clause, should be rendered wholly ineffective as a matter of law. In support of this position he relies on 3A Corbin, Contracts § 763 which provides in pertinent part: "Parties to a contract can not, even by an express provision

in that contract, deprive themselves of the power to alter or vary or discharge it by subsequent agreement. . . . In like manner, a provision that an express condition of a promise or promises in the contract can not be eliminated by waiver, or by conduct constituting an estoppel, is wholly ineffective. The promisor still has the power to waive the condition, or by his conduct to estop himself from insisting upon it, to the same extent that he would have had this power if there had been no such provision."

There is no indication that the parties to the above-cited contract have attempted to deprive themselves of the "power to alter or vary or discharge it by subsequent agreement." Thus the referenced portion of Corbin's treatise is not applicable to this case. There is nothing to prevent the parties from modifying the contract by the same means or method as it was written. Notably, it is a ten year lease and comes within the statute of frauds. Presumably a material alteration of the terms would be in writing. The defendant's assertion that the clause is "wholly ineffective" because it prevents the parties from exercising their rights to alter or rewrite a contract wrongly applies the law to the facts of this case as the Appellate Session explained.[1] The nonwaiver clause at issue has the effect of assuring that certain conduct, such as forebearance, may not carry the legal consequences which might ensue absent prior agreement. See 3A Corbin, Contracts § 763. This is not contrary to the law stated in the treatise.

[1] The Appellate Session found that "[t]he defendant presented no evidence of waiver other than acceptance of late rental payments in the past. We conclude that this evidence, to which the nonwaiver provision clearly applies, was insufficient as a matter of law to establish a waiver."

At oral argument the defendant asserted that as a matter of law any prior notice of the landlord's intent to enforce the previously unenforced contract provision would effectively invalidate the defendant's waiver defense. He suggested that a note or conversation would suffice. It is the court's belief that the contract clause at issue, "notwithstanding any former waiver," which the trial court found to be clearly bargained for by the parties, provided just such a warning.

The defendant urges the court to adopt what he deems to be the "better law of foreign jurisdictions." He relies on two cases, *Fritts* v. *Cloud Oak Flooring,* 478 S.W.2d 8, 14 (Mo. Ct. App. 1972), and *Fisher* v. *Tiffin,* 551 P.2d 1061, 1063 (Or. 1976), to support his theory that the nonwaiver clause is wholly ineffective. Even if this court were inclined to follow the cited law, it need not do so since the cases the defendant relies upon are readily distinguishable. One, a mortgage foreclosure; *Fisher* v. *Tiffin,* supra, 1061; where giving effect to the nonwaiver clause would result in a much harsher result than in the present case, is a situation where courts are traditionally more lenient; the other, a common law forfeiture under Missouri law, is a situation where one party requested a remedy that the court indicated was far more extreme than the ordinary statutory forfeiture. *Fritts* v. *Cloud Oak Flooring,* supra, 12. In circumstances characterized by extreme remedies, harsh dealing or unequal bargaining positions it has been noted that "[t]he anxiety of the court to find a waiver or an estoppel increases in proportion to the extent and inequity of the forefeiture." 3A Corbin, Contracts § 754. In this case there are no facts which indicate unequal bargaining positions or sharp dealing by either party.

Simply stated, as evidenced by the contract, the parties agreed that the landlord could void the lease upon the occurrence of certain events. The contract specifically stated, by the nonwaiver clause, that forebearance of the landlord on one or more occasions did not indicate he intended to relinquish his rights on subsequent occasions. To find, as the defendant urges, a result directly contrary to the literal contract terms would make it virtually impossible for parties to plan or express their relationships. Since we view forebearance, as evidenced in this case, to be an act for the defendant's own benefit, we cannot predicate an estoppel in favor of one who is a wrongdoer in the sense that he has consistently violated the terms of the agreement. The defendant's reasoning would have us punish such an act and reward the wrongdoer. The defendant claims that he relied on the plaintiff's forebearance to his detriment. This is balanced by the plaintiff's justifiable reliance on the written contract which stated that forebearance would not result in the relinquishment of his rights. Accordingly, there is no reason in either law or equity for invalidating the nonwaiver clause.

The second issue raised in his appeal is the defendant's claim that a nonwaiver of forfeiture clause is not an effective bar to the defense of either waiver or estoppel when the conduct giving rise to the forfeiture is that which engendered the estoppel. The defendant does not brief his assertion that the waiver defense is valid in this context. Therefore, the court may consider the issue abandoned. *O'Connor* v. *Dory Corporation,* 174 Conn. 65, 70, 381 A.2d 559 (1977); *State* v. *Grasso,* 172 Conn. 298, 300, 374 A.2d 239 (1977). In his discussion of the second issue the defendant assumes

that the waiver defense is unavailable, yet he contends that the estoppel defense remains. To argue thus, the defendant must distinguish between waiver and estoppel. For authority to establish that estoppel may defeat a valid nonwaiver clause even though the waiver defense is thereby eliminated, the defendant relies on *Hoffman Wall Paper Co.* v. *Hartford,* 114 Conn. 531, 159 A. 346 (1932). The *Hoffman* court described the nonwaiver clause before it as follows: "The lease contained a provision that, after default made in any of its covenants, the acceptance of rent and failure to re-enter by the lessor should not be held to be a waiver of the right to terminate the lease and that the lessor might re-enter and take possession of the premises the same as if no rent had been accepted after the default. . . . The agreement was an unusual one, but we know of no reason why it was not valid. . . . The effect of it would be that, after default once occurred, the lease became in the absence of an estoppel, one terminable at the will of . . . [the landlord]." *Hoffman,* supra, 536–37. The defendant in his brief claims that this provision "makes it clear that even where a nonwaiver clause is found to be valid, the facts may still support an estoppel which would defeat the effect of such a clause." The defendant admits that the reference to estoppel is dictum yet this is his sole authority for the claim that the nonwaiver clause does not defeat both the defenses of waiver and estoppel. The *Hoffman* court was not addressing the issue pending before this court. The reference to the effect of a nonwaiver clause on the validity of an estoppel defense is purely gratuitous. Furthermore, the cited nonwaiver clause is far more extreme than the one at

issue.[2] *Hoffman* does not substantiate the defendant's claim that an estoppel defense is still available. This court has determined that implied waivers and estoppels by conduct are so similar that they are nearly indistinguishable. The issue was set forth in *Novella* v. *Hartford Accident & Indemnity Co.*, 163 Conn. 552, 564, 316 A.2d 394 (1972), as follows: " '[W]hile waivers and estoppels are theoretically very different things, and the distinction between them is one easy to preserve when express waivers are under consideration, it is nevertheless true that the dividing line between waivers implied from conduct and estoppels oftentimes becomes so shadowy that . . . the two terms have come to be quite commonly used interchangeably. When the term waiver is so used, however, the elements of an estoppel almost invariably appear, and it is quite apparent that it is employed to designate, not a pure waiver but one which has come into an existence of effectiveness through the application of the principles underlying estoppels. . . . [T]he apparent difference between certain of the cases becomes one of terms rather than of fundamental principle.' "

In conclusion the *Novella* court stated, "[w]e do not, however, place much weight on the particular label placed on the doctrine. 'The label counts for little.' " Id., 564–65. In view of this court's determination that the distinction between implied waiver and estoppel by conduct may be one of labels

---

[2] In *Hoffman Wall Paper Co.* v. *Hartford*, 114 Conn. 531, 159 A. 346 (1932), the nonwaiver clause provided that breach arising from default is never cured. In the contract now before the court, the plaintiff's option to terminate is nullified by accepting rent and is not reinstated until a subsequent untimely tender. Thus the effect of default is far more circumscribed. As the clauses are not identical there is no certainty that law arising from *Hoffman* is relevant to this case.

and not one of fundamental principles, we cannot accept the defendant's argument that the estoppel defense remains available to him. The appellate court found that the only evidence offered in support of the defense of waiver was the acceptance by the plaintiff of late rental payments and that this evidence alone was insufficient to establish a waiver in light of the nonwaiver clause in the lease. It further concluded that the same evidence was also inadequate to prove an estoppel.[3] We support this conclusion based upon the principles discussed hereinbefore in this opinion.

Additionally, as the defendant relies solely on the estoppel defense in this second issue, the defendant's own conduct must be considered. It is fundamental that a person who claims an estoppel must show that he exercised due diligence to know the truth, and that he not only did not know of the true state of things but also lacked any reasonably available means of acquiring knowledge. *Novella* v. *Hartford Accident & Indemnity Co.,* supra, 565; *State* v. *American News Co.,* 152 Conn. 101, 114, 203 A.2d 296 (1964); *Linahan* v. *Linahan,* 131 Conn. 307, 327, 39 A.2d 895 (1944). There is no evidence that the defendant attempted to determine whether he might give legal significance to the plaintiff's forebearance. Also, the defendant sets forth no circumstances which impose a duty on the plaintiff

---

[3] In ruling against the defendant on the issue of estoppel, the Appellate Session stated the following: "An equitable estoppel arises only where one party has done something intended or calculated to induce another to believe in the existence of certain facts and to act in that belief. *Bozzi* v. *Bozzi,* 177 Conn. 232, 242, 413 A.2d 834 (1979). A reasonable reliance upon the misleading conduct, resulting in some detriment to the party claiming the estoppel is also required. Id. The evidence submitted by the defendant is insufficient to establish either of these two essential elements of an estoppel."

to object continually to late payment. Rather, the plaintiff had every right to rely on the nonwaiver clause in the contract.

There is no error.

In this opinion HEALEY and ARMENTANO, Js., concurred.

PETERS, J. (dissenting). I disagree. The majority opinion accepts the principle of law established by our cases and by the treatise writers that parties to a written contract retain the power to alter or vary or discharge any of its provisions by a subsequent agreement. See, e.g., *Brian Construction & Development Co.* v. *Brighenti,* 176 Conn. 162, 169–70, 405 A.2d 72 (1978); *Blakeslee* v. *Water Commissioners of Hartford,* 121 Conn. 163, 182–83, 183 A. 887 (1936); *O'Loughlin* v. *Poli,* 82 Conn. 427, 432, 74 A. 763 (1909); 3A Corbin, Contracts (1960) § 763; 6 Corbin, Contracts (1962) § 1295; 15 Williston, Contracts (3d Ed. 1972) § 1828. The majority opinion accepts the factual premise that twenty-four months' uncomplaining receipt of belated rental payments creates an ambiguity about the continued enforceability of the forefeiture clause in the lease. This combination of law and fact leads me to the conclusion that the plaintiff cannot now peremptorily rely on the nonwaiver clause in the lease to establish its right to retake the premises.

I would remand to the trial court for an evidentiary hearing on whether there has been a waiver in fact, in which hearing the contract's nonwaiver clause would be relevant but not dispositive. If the trier determines that there has been a waiver, then I would follow the provisions of 1 Restatement

(Second), Contracts (1981) § 84[1] which, like Uniform Commercial Code § 2-209, General Statutes § 42a-2-209 (5), would permit reinstatement of the forfeiture provision only upon notification to the defendant.

Neither the hearing that has been held nor the statute of frauds is an obstacle to this resolution. The trial court's memorandum of decision demonstrates that the court determined the question of waiver by erroneously assigning conclusive weight to the nonwaiver clause. The statute of frauds does not require written modification of nonessential clauses, such as nonwaiver clauses. See *Lynch* v. *Davis,* 181 Conn. 434, 441n, 435 A.2d 977 (1980); 1 Restatement (Second), Contracts (1981) § 150.

---

[1] 1 Restatement (Second), Contracts (1981) § 84 provides as follows:

"PROMISE TO PERFORM A DUTY IN SPITE OF NON-OCCURRENCE OF A CONDITION

"(1)Except as stated in Subsection (2), a promise to perform all or part of a conditional duty under an antecedent contract in spite of the non-occurrence of the condition is binding, whether the promise is made before or after the time for the condition to occur, unless

"(a) occurrence of the condition was a material part of the agreed exchange for the performance of the duty and the promisee was under no duty that it occur; or

"(b) uncertainty of the occurrence of the condition was an element of the risk assumed by the promisor.

"(2) If such a promise is made before the time for the occurrence of the condition has expired and the condition is within the control of the promisee or a beneficiary, the promisor can make his duty again subject to the condition by notifying the promisee or beneficiary of his intention to do so if

"(a) the notification is received while there is still a reasonable time to cause the condition to occur under the antecedent terms or an extension given by the promisor; and

"(b) reinstatement of the requirement of the condition is not unjust because of a material change of position by the promisee or beneficiary; and

"(c) the promise is not binding apart from the rule stated in Subsection (1)."

I do not believe that the present record permits us to speculate about the reasons why the parties conducted their past business relationships as they did. The record does not show whether the defendant is a wrongdoer or a struggling businessman trying, in good faith, to make ends meet. The record equally does not show whether the plaintiff forbore from protest about late rental payments because of kindness or because of calculation about the scarcity of alternate business opportunities. Just as the record fails to demonstrate whether the defendant's conduct was wilful or the plaintiff's beneficent, so it fails to provide enlightenment about how the nonwaiver clause came into the contract, whether it was a bargained-for contract provision or a printed clause in a form contract.

It is precisely because the record is in every way so barren that I believe that a case for forfeiture and for rejecting waiver has not yet been made out. Cf. *Hamm* v. *Taylor,* 180 Conn. 491, 497, 429 A.2d 946 (1980). We simply do not know enough about the circumstances surrounding the negotiation of the lease or about the subsequent conduct of the parties to warrant affirmance of the judgment of the trial court. It seems to me that twenty-four months' acquiescence in delayed rental payments presents a sufficient basis for ambiguity to require a full evidentiary hearing.

In this opinion SPEZIALE, C. J., concurred.