420 P.2d 790

Robert HARRINGTON, Plaintiff-Respondent,

v.

Leslie T. McCARTHY and V. Leone McCarthy, Defendants-Appellants.

No. 9831.

Supreme Court of Idaho.

Nov. 28, 1966.

Joseph C. Adams, Jr., Lewiston, for appellants.

Blake, Givens & Feeney, Lewiston, for respondent.

SPEAR, Justice.

Robert Harrington, respondent herein, initiated proceedings in the district court, Nez Perce County, to foreclose a materialman's lien for work and materials furnished in the construction of a home in Lewiston for Leslie T. and V. Leone McCarthy, husband and wife, appellants herein, for which payment had not been received. The contract between the parties provided that Harrington would construct the house for $26,000.00 and that where the owners (McCarthy and wife) ordered in writing changes in the work, the contract sum would be adjusted accordingly, but that all claims for extra costs must be made in writing before executing the work involved. The district court found that the specifications and plans for the construction of the house were changed and that the respondent performed work and installed materials in addition to those shown in the original plans and specifications at the special instance and request of the appellants, either directly or by and through their authorized agent (Parr, the architect), for which the respondent was entitled to be reimbursed in the sum of $1,147.55 for the reasonable value of the extra work involved. However appellants contend that no written claim for extra work in the sum demanded by respondent was made in accord with the stipulation entered into by the parties, that such provision was never waived, and therefore recovery for such extra costs as were incurred was, for that reason, precluded.

The provision in the contract material to the litigation between the parties at bar is article 8 of that contract and is as follows:

"Changes in Work: The owner may order changes in the work, the contract sum being adjusted accordingly. All such orders and adjustments shall be in writing. Claims by the contractor for extra costs must be made in writing before executing the work involved."

Appellants, in the summer of 1963, obtained a mail order set of plans for the proposed construction of a residence in Lewiston, Idaho. The plans were discussed with William Parr, the architect retained by appellants. Parr told appellants to go ahead and obtain bids on the plans since the changes he contemplated would be minor. Sometime thereafter, appellants met with Mr. West, a local realtor, and gave him one set of the plans and a list of certain items wanted in the house which were changes from the original plans. This set of plans and the list of alterations Harrington (respondent) received from West for the purpose of submitting a bid for the construction of the McCarthy home.

The plans delivered to respondent and used by him to prepare his bid did not contain a list of materials for use in the home construction. There were, respondent explains, no specifications upon which to bid other than those which appeared in the blueprint and on the list of changes which were delivered with the plans. The plans, for example, specified sliding glass doors, but there was no specification for any particular type. Harrington submitted his bid in the sum of $26,000.00 based solely upon the plans and the list of changes which he had received. He obtained bids from various craftsmen and suppliers for the materials and craft services necessary to construct the house and to that total estimate added a cost factor for labor to reach the $26,000.00 bid price.

On October 28, 1963, respondent met with appellants at their home to discuss building the new house and to sign a contract. The parties at that time agreed upon certain changes requested by appellants. Pursuant to article 8 of the contract, supra, one of the changes from the plans bid on was written into the contract; the other, however, was not. The parties agreed, and the contract provided, that Parr, appellants' architect, would supervise the construction.

Construction started on or about December 12, 1963. In accord with the contract agreement of the parties, Parr prepared and revised drawings and supervised the construction. Throughout the major construction of the home respondent was without the plans upon which he submitted his bid. Respondent turned the plans originally in his possession over to the city building inspector for the purpose of obtaining a permit for construction. Harrington testified that when he asked for an additional set of plans from which he could work he was told there were not enough sets of plans available and that he was to use the working drawings prepared by Parr. It is admitted by appellants that respondent constructed the building from the working drawings or plans prepared by Parr and submitted to respondent.

During the initial stages of construction, Harrington periodically received working plans which, pursuant to the instructions of appellants, he followed to build the house. A complete set of working plans were never drawn or delivered to respondent. The working plans contained a number of differences from the plans used by respondent to prepare and submit his bid. Such changes resulted in extra costs for the contractor. Harrington first became aware of the extra cost sometime in January 1964 when he discovered the use of thermo glass required in the architect's working plans for the windows and sliding doors involved a substantial extra cost not included in his bid. Concerned, respondent contacted appellants' mortgagee, the J. L. Cooper Company, which was dispersing the construction funds as work progressed. Thereafter a meeting was set up at McCarthy's office. Those attending that meeting were McCullum, a representative of the mortgagee, West and his partner Adams (realtors), McCarthy and Harrington. McCarthy referred Harrington to Parr whom he asserted represented him in this matter, and on that same day Harrington and the others met with the architect. Parr was informed that the cost of windows, doors and several other items were exceeding the cost bid. A disagreement between Parr and Harrington ensued and Harrington was asked to leave. However Parr acknowledged to the others, after respondent had left, that costs were in excess of the cost bid and that some adjustment should be made which he would discuss with McCarthy.

This meeting took place either the latter part of February or early March 1964. Thereafter the contractor never received additional working drawings from the architect, but worked from the plans originally delivered to him and returned from the city inspector. Appellants, subsequently, requested additional changes to enlarge the patio and substitute the use of wallpaper for paint. Harrington had not as yet received compensation for the extra cost of changes previously installed. He therefore demanded that such requests be reduced to writing which was done on or about March 10, 1964. No claim at this time was made regarding additional costs of materials that respondent demanded in his complaint and claim of lien and appellants urge respondent is estopped now to claim such costs.

The house was completed April 1, 1964. The McCarthys started moving their belongings into the new house prior to its completion and finished moving on or about the 5th of April. On May 20, 1964, the attorney representing Harrington wrote a letter to appellants setting out a list of changes and the extra costs for such changes, demanding payment therefor. On June 30, 1964, respondent filed a notice of lien against the property of appellants in the sum of $11,678.92 for labor and materials rendered in performing the contract upon which respondent claimed there remained due and unpaid the sum of $10,400.00 plus the value of the additions installed at appellants' request in the sum of $1,278.92. Appellants, on October 21, 1964, through the North Idaho Title Company of Lewiston, tendered the unpaid balance of the $26,000.00 contract price *plus the balance owed for the extras that had been*

*agreed upon in writing.* This tender of payment Harrington rejected as not being the full amount owed him and on October 22nd the respondent commenced this suit.

The district court found the balance owed plaintiff Harrington was $11,489.75, which amount represented that sum requested by plaintiff less certain offsets (claimed by appellants in a cross-complaint) and deductions as found on the evidence submitted in the trial. The court additionally awarded $1,500.00 attorney's fees to counsel for plaintiff plus the sum of $26.55, which amount represented the cost of filing the claim of lien. The court found the lien valid and ordered it foreclosed, as provided by law, on the property subject to the lien. From that judgment and order this appeal has been taken.

Two assignments of error have been presented by appellants on their appeal.

Appellants' first contention is that the district court committed error in awarding respondent the sum of $1,147.55 for extras, less an offset of $58.00, for two reasons: (1) that such changes in the work which resulted in extra cost to respondent were not ordered by appellants in writing, and (2) that no claim for the extra cost involved was made in writing to appellants pursuant to the requirements provided in article 8 of the building contract. The district court did not specify upon what ground judgment was awarded respondent, but it is evident from the court's findings and conclusions, that it was determined either that the parties to the contract had by their conduct waived the restrictions set forth in article 8 or that appellants by their action were estopped to rely upon them. The appellants maintain the stipulation to which the parties had agreed was not waived but remained in full force and effect throughout the construction of the house and that noncompliance therewith precluded the recovery awarded respondent.

■ We find appellants' first assignment of error is without merit. The rule is well recognized that the provision in a private building or construction contract that alterations or extras must be ordered in writing can be avoided by the parties to the contract where their words, acts or conduct amount to a waiver, modification, rescission or abandonment of that provision or where the owner by his acts or conduct is estopped to rely on it. See generally, Anno. 2 A.L.R.3d 620; C. F. Bolster Co. v. J. C. Boespflug Construction Co., 167 Cal.2d 143, 334 P.2d 247 (1959); Ward v. Town Tavern, 191 Or. 1, 228 P.2d 216, 42 A.L.R.2d 662 (1951); American Sheet Metal Works, Inc. v. Haynes, 407 P.2d 429 (Wash.1965); Davis v. Altose, 35 Wash.2d 807, 215 P.2d 705 (1950); Eggers v. Luster, 32 Wash.2d 86, 200 P.2d 520 (1948); Sitkin v. Smith, 35 Ariz. 226, 276 P. 521, 66 A.L.R. 645 (1929); Cavanagh v. Keplinger, 204 Cal. 19, 266 P. 287 (1928); Expanded Metal Fireproofing Co. v. Noel Const. Co., 87 Ohio St. 428, 101 N.E. 348 (1913); McLeod v. Genius, 31 Neb. 1, 47 N.W. 473 (1890). This state, moreover, has long adhered to the rule that the parties to an unperformed written contract may, by mutual consent, modify it by altering, excising or adding provisions, and that such modifications may be by parol agreement or inferred from the conduct of the parties. Ore-Ida Potato Products, Inc. v. Larsen, 83 Idaho 290, 362 P.2d 384; Inland Empire Refineries v. Jones, 69 Idaho 335, 206 P.2d 519; Idaho Gold Dredging Corp. v. Boise Payette Lumber Co., 62 Idaho 683, 115 P.2d 401; Smith v. Washburn-Wilson Seed Co., 54 Idaho 659, 34 P.2d 969; Brooks v. Beach, 50 Idaho 185, 294 P. 505.

■ The evidence adduced at trial supports the judgment below in that such evidence establishes both a pattern of conduct by the parties which indicates their intention to waive those restrictions on extras found in article 8 of the building contract, and conduct on the part of the appellants sufficient to raise an estoppel to preclude reliance upon those provisions to avoid liability for those costs for extras incurred by respondent. The trial court found, and such finding is supported by uncontradicted evidence, both oral and

documentary, that appellants authorized the changes in plans and specifications followed by respondent in the construction of appellants' residence which resulted in extra costs above the original cost estimate. The changes which were incorporated in the working drawings prepared by appellants' architect were never reduced to writing pursuant to the written contract agreement of the parties and are substantial evidence that appellants waived the requirement that all changes be ordered in writing. The record additionally shows that appellants verbally requested respondent to make other changes in the plans upon which respondent submitted his bid which also were not reduced to writing. This fact is further evidence that appellants disregarded the contract provision upon which they now rely. The appellants' contention generally admits such facts but reasons that recovery nonetheless should have been denied, since appellants did not expressly agree either verbally or in writing to reimburse respondent for the extra cost which resulted on account of the changes which were made and followed, per appellants' instruction, by respondent.

The reasoning which appellants would have us apply is that respondent, under the terms of the stipulation to which the parties agreed, where he objected to any changes in the house plans had the option of making that change or not making it; and where that change involved extra cost, respondent had the duty, if he went ahead with the change, to consult with appellants and agree upon the amount of extra cost which would result before starting work. The kind of contract provision agreed to here between the parties, namely, article 8, appellants point out, is included to protect the owner from unnecessary and unwarranted expenses. The average person, it is claimed, desiring to build a home would be entirely at the mercy of a contractor if this type of provision were held ineffectual by the courts.

This argument is without merit in view of the facts presented in the case at bar. The appellants either directly or through their authorized agent, architect Parr, knew that such changes as were indicated on the architect's working drawings involved extra cost for which respondent fully expected to be paid. The respondent, when he realized that costs were exceeding original cost estimates, arranged an immediate meeting in an attempt to straighten the matter out, and the evidence further shows that respondent's claim for extra costs was never relinquished by him. The costs for which claim is made were such as could reasonably have been expected to result on account of the changes made and this is not a case wherein an owner orders changes without a full appreciation of the added expense involved. The several items for which costs are sought in this case would not present a situation where an owner would mistake the cost involved. The items for which it is sought to recover are, for example: (1) extra cost expended for use of special thermo glass in windows and sliding glass doors; (2) staining of kitchen cabinets; (3) installation of iron stair-rail; and (4) addition of cement patio. The appellants under these circumstances cannot justly complain of the judgment awarded respondent for the reasonable value of the cost for extras installed pursuant to the order and with the approval of appellants. McCaffrey v. Groton & S. St. Ry. Co., 85 Conn. 584, 84 A. 284 (1912); McLeod v. Genius, supra.

Appellants as part of their first assignment of error further allege that the evidence is insufficient upon which the court could award a judgment on the quantum meruit basis. However it is not pointed out in what respect this is true. The rule clearly is that respondent is entitled to the reasonable value of the extra work and materials which resulted from the changes made, and appellants do not specifically challenge the evidence upon which the finding of such reasonable

value was based. See for example, C. F. Bolster Co. v. J. C. Boespflug Construction Co., supra.

Secondly, appellants assign error in the award of attorney's fees in this action. The argument advanced is that I.C. § 45–513[1] authorizing the award of attorney's fees is unconstitutional in that principally it violates the guarantee of equal protection before the law found in both the United States and Idaho constitutions since where the lien is valid the statute awards attorney's fees to counsel for the lienor but does not award attorney's fees to counsel representing an alleged debtor where the court determines no debt existed. Also that it singles out and penalizes a special class of debtor. The constitutionality of this provision, however, has been upheld in Thompson v. Wise Boy Min., etc., Co., 9 Idaho 363, 74 P. 958 (1903). This decision has often been followed but never modified or reversed in the many intervening years, and the reasoning therein is equally valid and applicable to the case at bar. Appellants' second assignment of error, therefore, is also without merit.

Appellants also contended that since they made a tender of the amount they felt was due respondent under the contract, the court erred in allowing costs, interest and attorney's fees. Since the amount tendered was less than the amount found due by the trial court, such tender was insufficient and invalid. Machold v. Farnan, 20 Idaho 80, 117 P. 408; Dohrman v. Tomlinson, 88 Idaho 313, 399 P.2d 255.

Judgment affirmed. Costs to respondent.

McFADDEN, C. J., and McQUADE, TAYLOR and SMITH, JJ., concur.

1. "45–513. Joinder of actions—Filing fees as costs—Attorney's fees.—Any number of persons claiming liens against the same property may join in the same action, and when separate actions are commenced the court may consolidate them. The court shall also allow as part of the costs the moneys paid for filing and recording the claim, and reasonable attorney's fees."